UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ANGIE MAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CV-309 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This social security case is before the Court for consideration of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13, 14] and Defendant's Motion for Summary Judgment and Memorandum in Support. [Docs. 18, 19.] Plaintiff Angie Y. Mayes seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On March 13, 2003, the Plaintiff filed an application for Title XVI benefits, which was denied initially, on reconsideration, and following a hearing before ALJ John L. McFadyen. [Tr. 20.] The Court remanded this case to the ALJ by an order dated February 5, 2007, with the instruction to perform further evaluation of the Plaintiff's claim as of the period beginning January 14, 2003. [Civil Case No. 3:07-CV-165, Doc. 17.]

Supplemental hearings were held in this matter on May 24, 2007, and October 9, 2007. On October 30, 2007, the ALJ found that Plaintiff was not disabled. The Appeals

Council denied Plaintiff's request for review on June 6, 2008; thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1.    The claimant has not engaged in substantial gainful activity since March 13, 2003, the date she filed her application for benefits.

2.    The medical evidence establishes that the claimant has combined impairments which are severe, but she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3.    The claimant's allegations of disabling pain and other symptoms are not credible and are not supported by the documentary evidence.

4.    The claimant has the residual functional capacity to perform the physical exertion requirements of work except for medium to heavy exertion and exposure to significant respiratory irritants (20 CFR 416.945).

5.    The claimant has no past relevant work.

6.    The claimant has the residual functional capacity to perform the full range of light work (20 CFR 416.967).

7.    The claimant is 43 years old, which is defined as younger-aged (20 CFR 416.963).

8.    The claimant has a limited education (20 CFR 416.964).

9. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

10. Section 416.969 of Regulations No. 16 and Rule 202.17, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that the claimant, considering her residual functional capacity, age, education, and work experience, is not disabled.

[11.] The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

[Tr. 25-26.]

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

3

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.    If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.    If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.    If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.    If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.    Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  *Walters*, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  *Id.*  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and

4

whether there is substantial evidence in the record to support the ALJ's findings. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. *Boyes v. Sec'y. of Health & Human Serv.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   ANALYSIS

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. The Plaintiff makes two overarching contentions that the ALJ erred by: (A) finding the Plaintiff had no mental impairments that would restrict her residual functional capacity and (B) finding that the Plaintiff retains the residual functional capacity to perform light work in a clean environment. [Doc. 14 at 13, 17.] The Commissioner, in response, contends substantial evidence supports the ALJ's disability determination. [Doc. 19.]

## A.     The Credibility of the Plaintiff's Complaints

Because the evidence in support of the Plaintiff's disability claim is made up of her subjective complaints, either directly through her own statements or indirectly through sources adopting her statements about pain or symptoms, the ALJ's credibility determination was central to the ultimate disability determination. The ALJ's credibility determination relates to both the physical and mental components of the residual functional capacity ("RFC") determination, and therefore, the Court will first address whether the ALJ's credibility determination is supported by substantial evidence.

In explaining the lack of credibility afforded to the Plaintiff's subjective complaints and the opinions which relied upon the Plaintiff's subjective complaints, the ALJ explained as follows:

> Based on the documentary evidence, the claimant does not have a medically determinable impairment or impairments in [a] combination which would preclude her from performing the full range of light work. Any opinions and/or assessments to the contrary area not credible and are obviously based on the claimant's exaggeration of symptoms and behavior. The claimant did not cooperate on mental examination by Dr. Smith. She has evidence of significant work activity as a caregiver after she filed her application for benefits. She has not cooperated with treating sources by ceasing smoking and consuming alcohol, which further diminishes her credibility. The claimant alleges limitations and pain related to being run over by a tractor, but this incident is not documented.

[Tr. 25.] In his decision, the ALJ further noted that the Plaintiff engaged in "drug seeking behaviors" that called into question the motivations for her complaints.

The ALJ identified at least four independent bases for discounting the Plaintiff's credibility, and each of these bases is documented in the evidence of record. The evidence of record supports the ALJ's inference that the Plaintiff was feigning symptoms, [*see* Tr. 680 (describing Dr. Henry's observation that the Plaintiff limped during examination, but not as she walked to her car after leaving the office)], and that she performed work during the alleged period of disability. [*See* Tr. 421, 434, 447, 457, 473, 537, and 542 (documenting Plaintiff as a self-employed caregiver).]

Further, the Plaintiff was inconsistent in reporting her alcohol use and has not discontinued her tobacco use. While the evidence in record does not demonstrate an explicit disregard of instructions to discontinue alcohol use, it does demonstrate that the Plaintiff was inconsistent in reporting her alcohol use. For example, on May 24, 2004, she reported to Dr. Horton, that she occasionally used alcohol [Tr. 621], but just a week earlier on May 17, 2004, the Plaintiff reported to Dr. Smith that she had "not used alcohol or marijuana in years." [Tr. 565.] In January of 2005, during a hospital stay to address an ulcer and rectal bleeding brought on by the Plaintiff's abuse of aspirin and use of alcohol, the Plaintiff was "strongly urged to discontinue her alcohol use," which she estimated included three to four beers per day. [Tr. 715-16.] However, the Plaintiff explicitly disregarded continued instructions to discontinue tobacco use. The Plaintiff was repeatedly advised to discontinue her tobacco use, [Tr. 620, 715], but as late as July of 2007, she reported smoking a pack of cigarettes each day. [Tr. 680.]

Finally, as the ALJ noted, the Plaintiff's contention that a tractor ran over her in 1998 is not documented by medical evidence in the record because she "toughed it out" and did not pursue medical treatment. [Tr. 158, 679.]

In sum, the Court finds that substantial evidence supports the ALJ's determination that the Plaintiff's credibility was diminished by her exaggeration of symptoms, evidence that she continued to work, her history of continued tobacco use, her inconsistent statements about alcohol use, and the lack of documentation of her being "ran over by [a] huge farm tractor." [Tr. 159.]

### B. Mental Limitations on the Plaintiff's Residual Function Capacity

The Court will next address the Plaintiff's contention that the ALJ erred by finding she did not have severe mental impairments. The Plaintiff contends that the "evidence of record shows that the Plaintiff suffers from mental impairments which would adversely affect her ability to work." [Doc. 14 at 13.] The Commissioner maintains that the ALJ's findings as to the Plaintiff's mental impairments are supported by substantial evidence. More specifically, though Plaintiff complained of mental symptoms, there was no documentation of such a condition or that it would impose significant work limitations. [Doc. 19 at 14.]

The ALJ explained his analysis of the Plaintiff's mental health conditions as follows:

> While the claimant complains of mental symptoms, she does not have a documented severe mental impairment imposing significant work limitations. She has received no treatment from a mental health source at any time pertinent to this decision. While a consultative expert, Kathryn Smith, Ph.D. saw the claimant on May 17, 2004, and reported diagnoses of major depressive disorder considered chronic and severe and

8

generalized anxiety disorder, it is clear that Dr. Smith relied solely on the claimant's allegations and description of symptoms and not on reliable evidence of a severe mental disorder. In fact, claimant's test scores on the WAIS-III and WRAT-3 were not valid as she did not put forth her best effort and the MMPI was also invalid and showed evidence of gross exaggeration and over reported psychopathology.

[Tr. 23.]

The weight accorded to an opinion depends upon the professional qualifications of the source. Medical and osteopathic doctors and licensed or certified psychologists are classified as "acceptable medical sources." SSR 06-03p at *1. In contrast, nurse practitioners, physician assistants, and licensed clinical social workers are considered "other medical sources." *Id*. at *2. Only an "acceptable medical source," i.e. a physician, can be a treating source and be given controlling weight. *Id*. When determining the weight that should be accorded to any medical source, the ALJ is to consider: whether the relationship is an examining relationship; whether the relationship is a treating relationship; the length, nature, and extent of treatment; the supportability of the opinion; the opinion's consistency with other evidence in the record; specialization; and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) and 416.927(d).

Applying these rules and considerations to the present case, the Court finds that an examination of the evidence cited by the Plaintiff does not undermine the ALJ's weighing of the evidence of record or conclusion that the evidence in the record did not document a mental impairment, despite the Plaintiff's subjective complaints that such an impairment existed.

9

The Plaintiff first cites visit notes from the Integrative Pain Center. However, these notes were made by a nurse practitioner, who did not specialize in mental health impairments. [Tr. 319-332, 624-26.] Similarly, the Plaintiff cites to a note by Harsha Shanthaveerappa, M.D., ("Dr. Shanthaveerappa") that the Plaintiff suffered from anxiety disorder. Dr. Shanthaveerappa specializes in pulmonary disease and is not a mental health specialist. Further, the visit with Dr. Shanthaveerappa was meant to address the Plaintiff's complaints of chest pain and epigastric pain. [Tr. 538.] The Plaintiff also directs the Court to a diagnosis of depression that George Brooks, D.O, ("Dr. Brooks") made after his consultation with the Plaintiff, but Dr. Brooks's diagnosis relies upon the Plaintiff's reports of treatment by other physicians, including those at the Pain Center. [Tr. 551-52, 554.] The Court finds that the notes from the Integrative Pain Center, Dr. Shanthaveerappa, and Dr. Brooks were outside of the physicians and other sources' speciality, were ultimately based upon self-report from the Plaintiff, which for the reasons above are not credible, and were not part of not part of an ongoing mental health treatment relationship.

The Plaintiff also cites notes from visits with Stacey Vance, M.D., ("Dr. Vance") and Nurse Practitioner Russell as evidence of mental health impairments. Again, Dr. Vance is a family practitioner, not a mental health specialist, and the Plaintiff's visits to Dr. Vance were made to address symptoms other than mental health impairments—for example, to address right shoulder pain and back pain. [Tr. 279, 280.] Further, only a single visit to Dr. Vance, the one made February 19, 2003, falls within the Court's current disability review. At that visit, Dr. Vance noted that she was relying on the Plaintiff's self-reporting. [*See* Tr.

10

279 (explaining Plaintiff "also complains of some anxiety type symptoms").] Thus, the Court finds that Dr. Vance's opinion was outside of her area of expertise, was not part of an ongoing mental health treatment relationship, was based only on uncredible self-reporting, and was not based upon objective medical evidence.

In the same vein, Ms. Russell is neither a physician nor a specialist in mental health care. She primarily treated the Plaintiff for general physical ailments—for example, gastric reflux issues, constipation, ear infections, urination issues, abdominal issues, sinusitis, chest pain, sore throat, fatigue. [Tr. 333-58.] These facts support the ALJ's decision to accord little weight to the medical assessment form Ms. Russell completed. While Ms. Russell found that the Plaintiff had a good or fair ability to complete a number of occupational, performance, and social adjustments, she also concluded that the Plaintiff had poor or no ability to deal with work stresses or behave in an emotionally stable manner. [Tr. 375-76.] In the three spaces left for "medical/clinical findings" to support findings about occupational, performance, and social adjustments, Ms. Russell thrice repeated "patient very depressed." [Tr. 375-76.] This statement alone does not constitute objective medical evidence to support Ms. Russell's opinion. Thus, the Court finds that Ms. Russell's opinion was outside of her area of expertise, was not part of an ongoing mental health treatment relationship, and was not supported by objective medical evidence.

Finally, the Plaintiff cites the Court to a crisis response screening form completed on January 18, 2004, in which a social worker at Cherokee Health Systems assigned the Plaintiff a Global Assessment of Functioning score of 52, a score indicating moderate symptoms of

11

a mental health impairment. *See* American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (Text Revision) (DSM-IV-TR) (2000); *White v. Comm'r Soc. Sec.*, 2009 WL 454916 (6th Cir. February 24, 2009). First, the Court finds that this score is indicative of only moderate impairments and does not support a finding of significant limitations or impairments.

Further, a GAF score is not raw medical data, and its weight, like other medical opinions, should be evaluated according to its supportability, consistency, and other factors. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). In the present case, the GAF score was issued after a single session with the Plaintiff, and, as with the other evidence presented by the Plaintiff, relied heavily on self-reporting. Assuming that the GAF score supports finding a mental impairment that could affect the Plaintiff's RFC, the Court finds that it is not supported by objective clinical evidence and does not undermine the ALJ's decision.

Based on the foregoing, the Court finds that the ALJ's decision, as it relates to her mental health impairments, is supported by substantial evidence of record.

### C.    Physical Limitations on the Plaintiff's Residual Functional Capacity

The Plaintiff also contends that the ALJ erred in his assessment of the physical component of the Plaintiff's RFC. Specifically, the Plaintiff contends that the ALJ did not accord sufficient weight to or properly discuss the opinions of: Charles Wohlwend, M.D., ("Dr. Wohlwend") at the Tennessee Valley Integrative Pain Center; Reeta Misra, M.D., ("Dr. Misra"), a state agency physician; Jeffrey Summers, M.D., ("Dr. Summers"), a consulting

physician; George Brooks, D.O., ("Dr. Brooks"), a consulting physician; and Bertram Henry, M.D., ("Dr. Henry"), a consulting physician.

The ALJ found the Plaintiff to be capable of performing the full range of light work—i.e. lifting no more than twenty pounds at a time with frequent lifting of 10 pounds, standing "a good deal," and sitting most of the time. 20 C.F.R. § 404.1567. The ALJ rejected the medical opinions of the various treating and consulting sources to the extent that they found the Plaintiff was more limited, as any additional findings of impairments were "obviously based on the [Plaintiff's] exaggeration of symptoms and allegations." [Tr. 25.]

    *1.*    *Dr. Misra*

The Plaintiff argues that the ALJ did not properly address the opinion of Dr. Misra, a reviewing state agency physician. The Court notes that Dr. Misra found the Plaintiff could occasionally lift twenty pounds and could frequently lift ten pounds, an opinion wholly consistent with light work. [Tr. 304.] Dr. Misra indicated that the Plaintiff could both "occasionally" and "never" climb on ladders, ropes, or scaffolds [Tr. 305], so this opinion about climbing is internally inconsistent. While Dr. Misra's opinion is somewhat inconsistent with the ALJ's decision not to include climbing limitations, the Court finds that the inconsistent opinion of a reviewing physician fails to demonstrate that the ALJ's finding was not supported by substantial evidence.

    *2.*    *Dr. Summers*

The Plaintiff next directs the Court to the opinion of Dr. Summers. After his consultative examination of the Plaintiff on July 8, 2003, Dr. Summers found that the

Plaintiff had a moderate decrease in range of motion and a limping antalgic gait. On this basis, he opined that it would be reasonable to expect the Plaintiff to have difficulty bending at the waist, stooping, kneeling, squatting, climbing, or lifting greater than twenty pounds. Dr. Summer's statement indicates that the Plaintiff could not be expected to consistently perform any of these tasks. However, light work entails only occasionally lifting twenty pounds or bending at the waist, stooping, kneeling, squatting, climbing. *See Carmichael v. Astrue*, 2007 WL 9511561, *1 (D. Me. 2007).

Initially the Court notes that the ALJ included these conditions in his hypothetical to the vocational expert, Donna Bardsley at the hearing, and the vocational expert found jobs still existed in the national and local economies. [Tr. 749-50.] While these conditions could have been added to the ALJ's residual functional capacity, the failure to include them does not demonstrate that the ALJ's decision is not supported by substantial evidence. It is well established that, while the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, the ALJ's decision is to be upheld so long as it is supported by substantial evidence. *See Crisp*, 790 F.2d at 453 n.4. Further, even if these exertional limitations were added as restrictions to the Plaintiff's residual functional capacity so that she could complete only sedentary work, the Medical-Vocational Guidelines would still direct a decision that the Plaintiff was not disabled. *See* 20 C.F.R. Pt. 404, Subpart P, App. 2, Table 1, Rule 201.24. Accordingly, a decision not to include these conditions would be harmless.

3.     *Dr. Brooks*

The Plaintiff next alleges that the ALJ did not sufficiently discuss his reasons for rejecting portions Dr. Brooks's opinion.  Dr. Brooks's opinion that the Plaintiff could occasionally lift or carry ten to twenty pounds, could sit for six hours in an eight-hour day, and could stand for two hours in an eight-hour day is consistent with the ALJ's finding that the Plaintiff retained the ability to complete light work. [Tr. 556-57.]  Dr. Brooks also opined: that the Plaintiff could never climb, balance, or crawl; that her ability to reach, push, and pull could be affected by an impairment in her right shoulder; and that she had certain environmental restrictions.  As with Dr. Summers's opinion, the Court again first finds that these conditions were included in the hypothetical presented to the vocational expert at the hearing. [Tr. 749-50.] The Court further finds that the ALJ's failure to include the limitations on climbing, balancing, and crawling in his statement of the RFC does not undermine the substantial evidence in the record supporting his RFC determination and that not including these conditions, even if it were an error, is harmless.

Looking at the Plaintiff's ability to reach, push, and pull, the Court recognizes that light work requires "some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  However, Dr. Brooks's opinion states only that the Plaintiff's ability to reach, push, and pull is affected by her impairments.  Dr. Brooks does not state that the Plaintiff is precluded from these activities or would only be able to rarely complete them.  A statement that these abilities could be affected without more does not direct a conclusion that the Plaintiff could not complete "some pushing and pulling."  Again, the ALJ noted in his

15

hypothetical to the vocational expert that the Plaintiff's capacity to push/pull was limited. [Tr. 749.] Again, even if these conditions and restrictions were to direct a finding that the Plaintiff could complete only sedentary work, the Medical-Vocational Guidelines would still direct a decision that the Plaintiff was not disabled. *See* 20 C.F.R. Pt. 404, Subpart P, App. 2, Table 1, Rule 201.24.

Finally, Dr. Brooks included a number of environmental restrictions which he noted were made to address the Plaintiff's COPD, a lung condition. To accommodate the COPD, the ALJ included the condition that the Plaintiff be restricted to a "clean but not sterile environment" in the his hypothetical to the vocational expert and an environment without "exposure to significant respiratory irritants" in his statement of the Plaintiff's RFC. [Tr. 747, 25.] The only environmental restriction that may not have been addressed directly by the RFC and hypothetical is the height restriction. Again, assuming *arguendo*, that the heights restriction was not included in the above limitations, the Court finds that any failure to include a height restriction was harmless. The jobs that the vocational expert found would be possible–including hand packing, sorting, assembling, and inspecting–do not entail exposure to heights and could be performed by the Plaintiff even with a height restriction.

### 4. *Dr. Henry*

The Plaintiff alleges a similar failure to sufficiently discuss the reasons for rejecting Dr. Henry's opinion, which was based upon a consultation on July 9, 2007. Dr. Henry opined Plaintiff can lift and carry up to ten pounds continuously, up to twenty pounds occasionally, and never more than twenty pounds. [Tr. 686.] He found she could sit for a

total of four hours in an eight-hour workday, could stand for a total of two hours in an eight-hour workday, and could walk for a total of two hours in an eight-hour workday. [Tr. 687.] He found the Plaintiff could occasionally reach, handle, finger, feel, and/or push/pull with the left hand and could complete these tasks continuously with her right hand. [Tr. 688.] He concluded the Plaintiff could frequently climb, balance, stoop, kneel, crouch, and/or crawl, but she could never be exposed to dust, odors, fumes, and pulmonary irritants and only occasionally be exposed to humidity or wetness, extreme cold, extreme heat, and/or vibrations. [Tr. 690.]

Dr. Henry's findings as to lifting and pushing/pulling/reaching were wholly consistent with the ALJ's conclusion that the Plaintiff could perform light work. His opinion that the Plaintiff could frequently climb, balance, stoop, kneel, crouch, and/or crawl and that her lung condition would preclude exposure to respiratory irritants also do not indicate restrictions beyond those recognized by the ALJ in the RFC. Dr. Henry also included a restriction on the Plaintiff's exposure to extreme humidity, heat, or cold. The ALJ did not specifically address this restriction in the RFC or his hypothetical to the vocational expert. However, the Court again finds the failure to include this restriction to be harmless. The jobs identified by the vocational expert do not entail exposure to these extremes, let alone more than occasional exposure.

Finally, Dr. Henry's finding that the Plaintiff was limited to four hours of sitting and two hours of standing in a day is inconsistent with the "good deal" of sitting and standing required by "light work." *See* SSR 83-10 (estimating that light work requires being on one's

feet six hours per day). The Plaintiff's inability to stand for six hours was sufficiently addressed in the hypothetical presented to the vocational expert. [*See* Tr. 748 (addressing the Plaintiff's inability to stand more than two hours in an eight-hour day)]; *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005). However, the ALJ's decision also relied on a finding that the Plaintiff could sit for six hours in an eight-hour day. This finding is inconsistent with Dr. Henry's finding that the Plaintiff could sit for only four hours per day. Nonetheless, it is based upon the findings of the other sources in the record, including Dr. Brooks's and Dr. Misra's opinions that the Plaintiff could sit for six hours in an eight-hour day [Tr. 304, 555], and Dr. Summers's implication that the Plaintiff was not restricted in her ability to sit. [Tr. 302.]

Accordingly, the Court finds that Dr. Henry's opinion was consistent with the ALJ's RFC determination, and the ALJ's decision not to explicitly include Dr. Henry's notation that the Plaintiff should only be exposed to extreme humidity, heat, and cold occasionally, was harmless.

    5.    *Dr. Wohlwend*

Finally, the Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Wohlwend, a treating physician. On March 10, 2004, Dr. Wohlwend opined that the Plaintiff could lift/carry ten pounds occasionally and five pounds frequently; could stand and or walk for a total of two hours in an eight-hour day; could sit for three to four hours in an eight-hour day; can never climb, crouch, or crawl; could occasionally stoop, kneel, or balance; and that the Plaintiff's impairments affect her ability to push, pull, and reach. [Tr. 331-32.]  Dr.

18

Wohlwend also opined that the Plaintiff should be limited in her exposure to heights, moving machinery and vibration. [Tr. 332.]

The ALJ explained his decision to discount the records of Dr. Wohlwend and the other sources at the Integrative Pain Center by stating that he found the opinion that the Plaintiff was limited to less than light work to be based on subjective complaints that, as explained above, were not credible. [Tr. 25.]

If a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527 and 416.927. If the opinion is not entitled to controlling weight, the weight to be accorded is evaluated based upon above identified factors—the length, nature, and extent of treatment; the supportability of the opinion; the opinion's consistency with other evidence in the record; specialization; and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) and 416.927(d).

Comparing Dr. Wohlwend's opinion to the ALJ's RFC determination, the Court finds the two are inconsistent in their assessment of the Plaintiff's ability to lift and carry. The Court concludes that Dr. Wohlwend's opinion is not entitled to controlling weight in regard to these restrictions. Dr. Wohlwend had a treating relationship with the Plaintiff, although the Court notes that his relationship appears to have consisted of treating the pain produced by the Plaintiff's various physical ailments rather than directly addressing the underlying conditions. However, the evidence of record, which has been thoroughly reviewed in this

19

memorandum and order, is not consistent with Dr. Wohlwend's severe limitations on the Plaintiff's ability to lift more than five to ten pounds. The other physicians who examined the Plaintiff found she had the ability to lift between ten and twenty pounds, consistent with the RFC determination. [Tr. 304, 556, 686.] Accordingly, the Court finds that Dr. Wohlwend's restriction on the Plaintiff's ability to lift and carry is inconsistent with the evidence of record and is not well-supported by medically acceptable evidence, so it is not entitled to controlling weight. Further, the Court finds that the ALJ properly explained his reasons for rejecting Dr. Wohlwend's opinion, pursuant to 20 C.F.R. §§ 404.1527(d)(2) and 416.927.

Turning to the factors to be considered in determining an opinion's weight, 20 C.F.R. §§ 404.1527(d) and 416.927(d), the Court finds, for the same reasons, that there is substantial evidence to support the ALJ's determination that Dr. Wohlwend's opinion, to the extent it restricted the Plaintiff to less than light work, was rejected.

The other components of Dr. Wohlwend's opinion were sufficiently addressed in the hypotheticals presented to the vocational expert. [*See* Tr. 748 (addressing inability to stand more than two hours in an eight-hour day), Tr. 749-50 (addressing limited ability to pull and push and difficulty bending at the waist, stooping, kneeling, squatting, and climbing), and Tr. 747 and 751 (addressing the need for a clean environment)]; *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005). The Court finds that the ALJ relied on the vocational expert's testimony at step five, and the vocational expert's testimony was based upon hypotheticals that properly incorporated the above restrictions.

The ALJ did not address the height, moving machines, and vibration restriction identified by Dr. Wohlwend. Dr. Wohlwend's notation in support of this restriction states that there is a chance of falling at heights, but the remaining five or so words of the statement are illegible. The Court has found nothing in the record to support such restrictions. The environmental restrictions identified by other physicians are tied to the Plaintiff's respiratory issues, but the evidence of record does not indicate any condition that would necessitate these additional restrictions. Further, as previously noted, the jobs identified by the ALJ–packing, sorting, assembling, and inspecting–could be completed without being exposed to heights, vibration, and moving machines. Accordingly, the Court finds that the ALJ's failure to include these restrictions in the RFC does not undermine the substantial evidence supporting the RFC determination.

For all of these reasons, the Court finds that there is substantial evidence in the record to support the ALJ's weighing of the evidence and, ultimately, the disability decision, as it relates to the Plaintiff's physical impairments. Where any omissions were made in the RFC, the Court finds they were harmless and does not undermine the substantial evidence in support of the ALJ's decision.

## V.      CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. Substantial evidence supports the ALJ's findings and conclusions. Therefore, Plaintiff's Motion For Summary Judgment [Doc. 13]

will be denied and the Commissioner's Motion for Summary Judgment [Doc. 18] will be granted.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE